IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GERMAINE CANNADY, | * | |
| Petitioner, | * | |
| v. | * | Civ. Action No. RDB-19-2612<br>Crim. Action No. RDB-14-0389 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In 2015, *pro se* Petitioner Germaine Cannady ("Petitioner" or "Cannady") and three co-defendants were tried together and convicted of one count of conspiracy to knowingly and intentionally distribute and possess with intent to distribute cocaine and heroin and one count of attempting to possess with the intent to distribute a certain quantity of illegal narcotics. (Jury Verdict, ECF No. 201.) On June 29, 2015, this Court sentenced Cannady to 192 months of imprisonment. (Judgment, ECF No. 304.) Pending before this Court is Cannady's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 501.) Also pending is Cannady's Motion to Amend the § 2255 Petition. (ECF No. 503.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Petitioner's Motion to Amend the § 2255 Petition (ECF No. 503) is GRANTED, but Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 501) is DENIED.

## BACKGROUND

On August 22, 2014, Petitioner Cannady, along with eight other individuals, was charged in an indictment with one count of conspiracy to distribute and possess with intent to distribute cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1) (Count I) and one count of attempted possession with intent to distribute cocaine and heroin, in violation of 21 U.S.C. § 841(b)(1)(A) (Count III). (Indictment, ECF No. 70.) Five of the defendants pled guilty before trial, while Cannady and three others proceeded to trial. On March 20, 2015, after an eight-day jury trial, Cannady was found guilty by a jury on both counts. (Jury Verdict, ECF No. 201.) Cannady received concurrent sentences of 192 months of imprisonment and six years of supervised release. (Judgment, ECF No. 304.)

The following is a summary of the facts proven at trial, as provided in Petitioner's Amended Presentence Investigation Report. (Amended Presentence Report at 4-5, ECF No. 302.) At trial, the Government introduced multiple phone calls between Petitioner and another individual, Michael Barrett, in which Petitioner discussed his desire to acquire at least one kilogram of cocaine and one kilogram of heroin. (*Id.* at 4.) The phone calls, which occurred between August 6, 2014 and August 11, 2014, were recorded, as Barrett had agreed to cooperate with law enforcement. (*Id.*) In the calls, Petitioner discussed the quantity of drugs he sought from Barrett. (*Id.*) On August 11, 2014, after the series of calls, Petitioner, accompanied by a co-defendant, met Barrett at the Mondawmin Mall, in an attempt to acquire one kilogram of cocaine and one kilogram of heroin. (*Id.* at 5.) Petitioner was arrested and charged along with eight other co-defendants. (ECF No. 70.) A jury found him guilty on

March 20, 2015 and this Court sentenced him to 192 months of imprisonment on June 29, 2015. (Jury Verdict, ECF No. 201; Judgment, ECF No. 304.)

Petitioner appealed this Court's decision to the United States Court of Appeals for the Fourth Circuit (ECF No. 308) and moved for a new trial in this Court (ECF No. 373). On December 14, 2016, this Court granted Petitioner's motion for a new trial based on this Court's finding a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), because the Government uncovered after trial what might have been a tally sheet, or a ledger recording drug sales, that it had not previously provided to Cannady. (ECF No. 403.) The Government appealed the decision and, on March 9, 2018, the Fourth Circuit reversed this Court's order, finding that the information at issue was not material under *Brady*. *See United States v. Cannady*, 719 Fed. App'x 237 (4th Cir. 2018). On remand, the Fourth Circuit reinstated Cannady's sentence of 192 months' imprisonment, which Cannady appealed on May 18, 2018. (ECF Nos. 478, 483.) On May 8, 2019, the Fourth Circuit affirmed Cannady's conviction and sentences. (ECF No. 499.); *United States v. Cannady*, 924 F.3d 94 (4th Cir. 2019).

On September 9, 2019 Petitioner filed the pending Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (ECF No. 501.) In his Motion, Petitioner contends that his counsel was constitutionally ineffective at trial. On October 17, 2019, Petitioner filed a Motion to Amend his § 2255 Motion, asserting that both his sentencing attorney and appellate attorney were ineffective because they failed to challenge his designation as a career offender. (ECF No. 503.)

## STANDARD OF REVIEW

This Court recognizes that Petitioner is *pro se* and has accorded his pleadings liberal

construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Alley v. Yadkin County Sheriff Dept.*, No. 17-1249, 698 F. App'x 141, 142 (4th Cir. Oct. 5, 2017) (citing *Erickson* for the proposition that "[p]ro se complaints and pleadings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers"). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to a collateral attack. *Hill v. United States,* 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of a § 2255 collateral attack is far narrower than an appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman,* __ U.S. __, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, procedural default will bar consideration under § 2255 of any matters that "could have been but were not pursued on direct appeal, [unless] the movant show cause and actual prejudice resulting from the errors of which he complains." *United States v. Pettiford*, 612 F. 3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)).

## ANALYSIS

Petitioner argues that both his trial and appellate counsel were ineffective. As to his trial counsel, Petitioner asserts that counsel was ineffective by: (1) allowing the Government

4

to knowingly present false testimony regarding the non-existence of a "tally sheet"; (2) allowing the Government to present false testimony that oxycodone and oxycontin pills were not seized from Petitioner; (3) allowing the Government to present false testimony about Michael Barrett's testimony that he was not given any oxycodone or oxycontin pills during a witness proffer session; and (4) failing to challenge Petitioner's designation as a career offender. (*See* ECF No. 501-1; ECF No. 503.) Petitioner also asserts that appellate counsel failed to challenge his designation as a career offender. (ECF No. 503.)

A claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). To state a claim for relief based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Id.* at 688. In making this determination, courts apply a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688–89. The second, or "prejudice" prong, requires that a petitioner demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687.

In applying the *Strickland* test, the United States Court of Appeals for the Fourth Circuit has noted that there is no reason to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee*, 723 F. 3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based solely on a deficiency in satisfying either the "performance" prong or the "prejudice"

prong. *See Strickland*, 466 U.S. at 697. The Fourth Circuit has noted further that the mere possibility of a different trial result does not satisfy the burden of proving prejudice. *Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986).

None of the bases proffered by Petitioner establish that any of his counsel were ineffective.

**I.    Tally Sheet**

Petitioner argues that his trial counsel was ineffective by failing to argue that the Government committed prosecutorial misconduct by knowingly allowing false testimony regarding a "tally sheet." The tally sheet in question is a piece of paper recording alleged drug sales that was uncovered by the Government after trial and which was never provided to Cannady. Cannady argues the tally sheet would have undermined Barrett's testimony against Cannady, leading the jury to discredit Barrett. While this information formed the basis for this Court's granting a new trial in this case (ECF No. 403), the Fourth Circuit reversed this Court's decision and found that the information at issue was not material under *Brady v. Maryland*, 373 U.S. 83 (1963). *See United States v. Cannady*, 719 Fed. App'x 237 (4th Cir. 2018).

Cannady's argument fails for several reasons, the most obvious of which is that his counsel could not have asserted prosecutorial misconduct at trial when the prosecutors themselves did not know about the existence of the tally sheet until after trial. When prosecutors discovered the tally sheet, they immediately brought it to the Court's and defense counsel's attention. Indeed, at the hearing on Cannady's motion for a new trial, this Court noted, "the record will reflect that there's been no impropriety committed by Assistant U.S.

6

Attorneys Christopher Romano or Seema Mittal, who have the highest respect from this Court." (Dec. 13, 2016 Hearing Tr. at 117:17-20, ECF No. 505-1.)

In addition, Cannady cannot establish any prejudice from the tally sheet's non-disclosure, as the Fourth Circuit specifically addressed the "minimal impeachment value" of the tally sheet. *See Cannady*, 719 Fed. App'x at 241. The Fourth Circuit explained, "the tally sheet is cumulative impeachment evidence and, even standing alone, is of inconclusive impeachment value," and "[i]ts nondisclosure does not 'put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S. Ct. 1555 (1995)). Accordingly, there is no basis to find that Cannady's defense counsel was deficient in failing to argue prosecutorial misconduct for the non-disclosure of the tally sheet.

## II. Pills seized from Cannady

Cannady asserts that his counsel was deficient in allowing the Government to present false testimony that oxycodone and oxycontin pills were not seized from Cannady. At trial, Special Agent Kehoe was questioned by defense counsel about his involvement in Cannady's arrest and his search of Cannady's person. (March 17, 2015 Trial Tr. at 67-71, ECF No. 355.) When asked about recovering "a plastic bag with some blue pills in it off Mr. Cannady's person," Kehoe stated, "I do not recall that." (*Id.* at 70:9-11.) However, the parties had already stipulated that the pills had been recovered from Cannady, and the pills were introduced by the defense as Cannady exhibit number 11 prior to Kehoe's testimony. (*Id.* at 70:20-71:4.) Defense counsel cross-examined Kehoe on his recollection of finding the pills, and indeed

showed Kehoe the previously admitted exhibit, which Kehoe stated he did not recollect finding. (*Id.* at 71:2-4.)

There is no basis for this Court to find any deficiency in defense counsel's handling of this testimony, as the parties specifically stipulated on the record that the pills were seized from Cannady. Cannady himself acknowledges this stipulation in his Reply to his pending Motion. (Pet.'s Reply at 5-6, ECF No. 507 ("To the Government's credit, there was indeed a stipulation that the pills came from Petitioner.").) Any allegedly false testimony from Special Agent Kehoe as to the seizure of the pills was likewise inconsequential to Cannady's case.

### III.    Barrett's use of drugs during proffer session

Cannady also argues that his counsel was ineffective by allowing the Government to present false testimony that Michael Barrett was not given any oxycodone or oxycontin pills during a witness proffer session. Cannady asserts that both Barrett and Special Agent Eric Nye falsely testified that Barrett was not provided pain medication during his witness interview with the FBI on August 7, 2014. Cannady argues that Barrett was "begging for oxycodone pills," and that he was given the pills during the interview, despite Barrett's and Nye's testimony that no pain medication was provided to Barrett during the witness interview. Portions of the video of Barrett's interview were also played before the jury.

Defense counsel cross-examined both Barrett and Nye at trial, specifically asking about Barrett's use of drugs during the interview. In cross-examining Special Agent Nye, defense counsel asked, "And [Barrett] actually asked I believe you and Special Agent Dayton if you could get him some medications?" to which Nye responded, "Yes…I told him we couldn't do that….We didn't have a means [sic] do it, anyway. There was no doctor." (March 16, 2015

Trial Tr. at 173:1-8, ECF No. 354.)  Nye further testified that Barrett was given pain medication *after* the interview.  (*Id.* at 173:9-16.)  Barrett testified on direct that he understood all of the questions asked of him during the August 6 and August 7 interviews, and that he did not have any difficulty understanding what was being asked of him.  (March 10, 2015 Trial Tr. at 58:25-59:5, ECF No. 351.)  On cross-examination by co-defendant's counsel, Barrett was asked again about his witness interview:

> Q: So you're in this room, and you're there, and Special Agent Nye's asking you questions, and you tell him you're sick, correct?
> A: Yes.
> Q: You tell him you need your medication, correct?
> A: Correct.
> Q: And you really want him to give you some oxy, correct?
> A: Yes.
> Q: Did you ever get any oxy that day?
> A: No.

(March 12, 2015 Trial Tr. at 146:22-147:8, ECF No. 353.)

In sum, there is nothing in defense counsel's handling of Barrett and Nye's testimony to suggest ineffective assistance of counsel.  Instead, the transcript shows that defense counsel pursued this line of inquiry with both witnesses, and the jury was able to view and judge the video of Barrett's interview for themselves.

### IV.    Petitioner's designation as a career offender

Finally, in his Motion to Amend his § 2255 Motion, Petitioner argues that both trial counsel and appellate counsel failed to challenge his designation as a career offender.  (ECF No. 503.)  Cannady's counsel's decision not to challenge this designation does not amount to deficient performance nor has Cannady met his burden to show that counsel's performance prejudiced him on this basis.  There is no question that Petitioner was a "career offender"

under the United States Sentencing Guidelines. Cannady was (1) at least eighteen years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction was a felony that was either a crime of violence or a controlled substance offense; and (3) Cannady had at least two prior felony convictions of either a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1(a); (Amended Presentence Report at 5, ECF No. 302.)

Moreover, any failure by counsel to dispute this designation was not prejudicial, as this Court did not base its sentencing decision entirely on Cannady's status as a career offender, which carried with it an advisory guideline range of 262 to 327 months. (*See* June 29, 2015 Sentencing Hearing Tr. at 97:11-21, ECF No. 331.) The Court noted, "you have been bumped up to a higher category because of being a career offender, so it is a factor here. But there are limits to how much it should be factored in. And when I look at all these factors here, I'm going to impose a sentence of 192 months, not the 240 months requested by the Government, not 20 years." (*Id.* at 128:8-13.)

Accordingly, Petitioner's ineffective assistance of counsel claims are without merit.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Amend the § 2255 Petition (ECF No. 503) is GRANTED, but Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 501) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: April 23, 2020

                                                                                 /s/
                                                          Richard D. Bennett
                                                          United States District Judge